### (October 22, 1964)

In the Matter of the Arbitration between JORDAN KAVRECICH, Appellant, and MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Respondent.

MEMORANDUM BY THE COURT. Order and judgment granting respondent's motion to set aside a jury verdict and directing a verdict on behalf of respondent, and granting a permanent stay of arbitration, reversed on the law and the facts and in the exercise of discretion, and the jury verdict reinstated, without costs. On Friday, March 1, 1963, at about 6:30 P.M. petitioner was struck by a hit and run vehicle. He was taken to a hospital and released at approximately 10:30 P.M. the same night. Petitioner remained in bed the following day. On Sunday, March 3, 1963, at 1:00 P.M. petitioner personally reported the accident to the police. Under petitioner's insurance policy and under subdivision (b) of section 608 of the Insurance Law petitioner was required to make a report within 24 hours or *as soon as reasonably possible*. The jury found petitioner had made a report to the police as soon as reasonably possible thus complying with the terms of the policy and the statute. Special and Trial Term erroneously set aside the jury's verdict and directed a verdict in favor of respondent. Whether or not the report was made as soon as reasonably possible was a factual issue to be decided by the jury. (*Matter of MVAIC* [*Brown*], 15 A D 2d 578, app. dsmd. 11 N Y 2d 968.)

EAGER, J. (dissenting). I would affirm the determination of the trial court which set aside the verdict of the jury and which directed a verdict in favor of MVAIC on the issue of timeliness of the reporting of the hit and run accident. The petitioner failed to sustain the burden of showing compliance with the condition of prompt reporting of such an accident.

On a Friday evening at 6:30 P.M., the petitioner was allegedly struck by a hit and run car while he was cleaning the snow off of his car which was parked in the street in front of his employer's shop. He testified that he was knocked to the ground and was unconscious for six or seven minutes. Thereafter, he arose, unassisted, and walked across the street to the shop and told his employer about the accident. The employer immediately drove him to Jacobi Hospital in The Bronx. The doctor, who examined him there, testified that "Physical examination showed superficial abrasions on the forehead and laceration on the dorsal aspect of the fifth finger of the right hand, and a 15 by 8 cm. lump over the quadriceps muscle on the right side, and superficial abrasions on the right lower leg. My final diagnosis was mutiple abrasions." Petitioner's testimony was that he had a facial swelling and a big headache. During his brief hospital stay, he was allowed to use the telephone and he called at least one person, his wife, to inform her of his expected late arrival home.

At 10:30 P.M., four hours after the accident, and after completion of a series of X rays, the petitioner left the hospital and, according to his testimony, he

walked to his home, a distance not specified. On reaching home, the petitioner went to bed and allegedly stayed in bed until Sunday morning, not leaving the house at all on Saturday. He testified that he did "nothing" on Saturday; "I was laying around all day. For that I didn't walk out Saturday". He did not, however, require further medical assistance and nowhere does it appear that he was not able to get up from bed or that he was so physically or mentally incapacitated as to be unable to use the telephone or ask someone else to call the authorities in his stead.

On the next day, a Sunday, he got up at between 8:00 and 9:00 A.M. He had his breakfast but what he was able to do and did thereafter until the afternoon was not established. It appears that he may have taken a walk in the morning. In the afternoon, he drove about two miles to the police station, there reporting the accident to the desk officer at about 1:00 P.M.

The petitioner was an insured under a MVAIC indorsement contained in a standard automobile liability policy issued to him. The indorsement provided in standard form for payment to the insured of damages for bodily injury caused by a "hit and run automobile". In this connection, the indorsement contained the following standard provision duly promulgated by MVAIC pursuant to subdivision (b) of section 606 of the Insurance Law to wit: "Hit-and-Run Automobile. The term 'hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours or as soon as reasonably possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles".

For similar provisions by statute for report of hit and run accidents by a "qualified person", see Insurance Law (§ 608 subd. [b]; § 618).

The provision of paramount importance is the one which requires a report to the police, peace or judicial officer or to the Commissioner of Motor Vehicles within 24 hours of the hit and run accident.

"The very short time provided is entirely reasonable. It is a common and usual course of conduct to report to the police incidents of the character which would give rise to a cause of action under the provisions of this statutory section. Almost invariably a crime is involved, and a crime which outrages at least the person injured. Also it is universally appreciated that, failing a prompt report, apprehension or identification of the malefactor is difficult to the point of virtual impossibility." (*Matter of Bonavisa* v. *MVAIC,* 21 Misc 2d 963, 964 [STEUER, J.].)

The provision for the report within the 24-hour period must be complied with unless such report was not "reasonably possible", and if not so possible, then the report must be made thereafter "as soon as reasonably possible".

The words "reasonably possible", as used in the policy provisions and the related statutory provisions, are to be construed according to their natural and obvious meaning. The word "possible" means "Capable of existing, happening, being, becoming or coming to pass" (see Black's Law Dictionary [4th ed.], p. 1328). This is the ordinary meaning of the word. Here, however, the word is qualified by the preceding adverb "reasonably". This merely denotes an intent that sheer capability of an insured or claimant reporting the hit and run accident within the 24-hour period or within a given time thereafter is not the test; but that the capability of so reporting is to be judged with reason, that is, in light of all the circumstances in the particular case. Nevertheless, the key word in the provision is the word "possible". It is significant that this word

is used instead of words of more flexibility, such as "practical" or "diligence", which words are often used in contractual or statutory provisions relating to time periods for the giving of a notice or the taking of certain action. Thus, obviously, the words "reasonably possible", as used here are not to be so broadly construed as to permit a party, bound to report within 24 hours, to proceed merely within a reasonable time. Capability of reporting within the prescribed time and not mere diligence is the focal point to which inquiry is to be directed in a given case. Otherwise, the purpose of the policy or statutory provisions would be frustrated. Consequently, in the ordinary case, though not relevant here,* I would hold that unfamiliarity on the part of the insured with the law or with the policy provisions or his mistaken belief, originally formed, that his injuries were merely superficial, would not be a factor for consideration in determining whether he reported the accident " as soon as reasonably possible ".

Inasmuch as it is clear that proof only of reasonable diligence in the matter of the reporting of the accident is not sufficient to show compliance in a given case, the decisions cited by the petitioner, such as *Matter of MVAIC (Brown)* (15 A D 2d 578) are not controlling.

Without doubt, the petitioner was well able physically and mentally to make a proper report within the 24-hour period. Under the circumstances, as a victim of a crime, it was not only the natural thing for the petitioner to do but it was his duty as a citizen to see to it that the police were quickly notified. Bearing in mind the purpose of the policy provisions, "it is reasonable to insist that the party should give a good and solid explanation of why he did not do what people in the same situation commonly do". (*Matter of Bonavisa* v. *MVAIC, supra,* p. 964.)

The burden of explanation was upon the petitioner, but upon his own testimony and the undisputed facts, there is no reasonable explanation of his failure to promptly report the accident. Particularly, the petitioner failed to present satisfactory proofs that his physical or mental condition was such as to justify his delay in reporting. According to the doctor who examined him after the accident, he sustained only minor injuries and he was not mentally afflicted. He required no prolonged hospital treatment. He testified that he walked home from the hospital late that night, and, if this is true, taking judicial notice of the distance between the hospital and his residence, he walked many blocks. Finally, he produced no medical testimony or other satisfactory evidence that his condition was such on the next day that he could not have reported the incident. He was able to and did promptly give notice of the accident to all others who could help him, and there is no reasonable explanation of his failure to make at least an effort to notify the police or ask someone to do this for him.

As a matter of law, the petitioner's proofs fail to raise an issue of fact and the trial court properly directed a verdict in favor of the respondent.

Botein, P. J., Breitel and Staley, JJ., concur in Memorandum by the Court; Eager, J., dissents in opinion in which Rabin, J., concurs.

Order and judgment granting respondent's motion to set aside a jury verdict and directing a verdict on behalf of respondent, and granting a permanent stay of arbitration, reversed on the law and facts and in the exercise of discretion, and the jury verdict reinstated, without costs.

* Here, the petitioner testified that he knew from a previous experience that he had to report the accident to the police.